# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **Darren Doherty** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **CIVIL NO. 1:16-CV-00003-LY** |
| | § | |
| | § | |
| **Hartford Life and Accident** | § | |
| **Insurance Company** | § | |
| | § | |
| | § | |
| *Defendant* | § | |

## PLAINTIFF'S TRIAL BRIEF

### *Nature of This Case*

This disability insurance case is brought under the civil enforcement provisions of the Employee Retirement Income Security Act, of 1974, ("ERISA"), specifically including those provisions outlined in 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1133. Hartford approved Doherty's short term disability (hereinafter referred to as "STD") claim stating he was continuously disabled for the period January 7, 2014 to April 7, 2014. Hartford denied Doherty's long term disability (hereinafter referred to as "LTD") claim alleging that he was not continuously disabled between January 7, 2014 and April 7, 2014. Hartford, in its LTD denial letter, agreed that Doherty was disabled as of March 5, 2014 through the date of the denial on July 11, 2014. Since Hartford agreed that Doherty was disabled as of the LTD benefit start date, the sole question before the Court is whether Hartford can revisit its favorable STD disability determination in order to deny Doherty LTD benefits.

1

### *Background*

Darren Doherty worked as a respiratory care practitioner for Texas Neuro Rehab from October 2012 to January 7, 2014.[1] On January 7, 2014, Doherty left the workplace and applied for short term disability benefits under the employer sponsored STD plan.[2] Hartford is the claims administrator for both the STD Plan and the LTD Plan.[3] In order to qualify for benefits under the STD Plan, Doherty needed to establish that he met the definition of Total Disability. The STD Plan defines Total Disability as:

> Total Disability or Totally Disabled means that You are prevented by:
> 1)      Injury;
> 2)      Sickness;
> 3)      Mental Illness;
> 4)      Substance Abuse; or
> 5)      pregnancy;
> from performing the Essential Duties of Your Occupation, and as a result,
> You are earning less than 20% of Your Predisability Earnings.[4]

The definition of Disability under the LTD is substantially the same. The LTD Plan defines Disability or Disabled as:

> Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:
>
> 1)  Your Occupation during the Elimination Period; and
>
> 2)  Your Occupation following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Pre-disability Earnings. If at the end of the Elimination Period, You are prevented from performing one or more of the Essential Duties of Your Occupation, but your Current Monthly Earnings are greater than 80% of Your Pre-Disability Earnings, whichever occurs first. For the purposes of extending the Elimination Period,

---

1 Administrative Record ("AR") 762
2 AR 854
3 AR 854, 913
4 AR 874

2

Your Current Monthly Earnings will not include the pay You could have received for another job or a modified job if such job was issued to You by the Employer, or another employer, and You refused the offer.
Your disability must result from:

1)  accidental bodily injury;
2)  sickness;
3)  mental Illness;
4)  substance Abuse; or
5)  pregnancy.[5]

The STD Plan provided up to 12 weeks of benefits.[6]  Hartford determined that Doherty met the definition of Total Disability and approved the maximum 12 weeks of STD benefits. Doherty was paid to the expiration of STD benefits on April 7, 2014.[7]

On March 11, 2014, Hartford notified Doherty that his STD benefits would end in April and provided him with documents that would transition the claim to LTD.[8] Doherty completed the application. Hartford denied the LTD claim on July 11, 2014.[9]  In the denial letter, Hartford conceded that Doherty was disabled and was unable to perform the essential duties of his own occupation. However, it alleged that the disability did not begin until March 5, 2014. The basis of Hartford's LTD denial was that Doherty was not continuously disabled during the entire Elimination Period which began on January 7, 2014 and ended on April 7, 2014. The denial letter stated, "We considered all of the evidence in your claim file in making our decision. The LTD policy states that benefits are payable if you are Disabled throughout and beyond the policy's Elimination Period. The combined information in your file does not show that you are unable to perform the Essential Duties

_____

5 AR 935
6 AR 862
7 AR 850
8 AR 851
9 AR 97

of Your Occupation on a full time basis as of January 7, 2014. Because of this, we must deny your claim for LTD benefits."[10]

Doherty appealed on January 7, 2015.[11] Hartford denied the appeal on March 2, 2015.[12] The appeal denial, as well as the original denial, stated that Doherty was not continuously disabled throughout the elimination period and beyond. Doherty filed this lawsuit after exhausting all administrative remedies.

## Summary of the Argument

### 1. The plain language of the Plan establishes that Doherty was continuously disabled throughout and beyond the Elimination Period.

"Elimination Period" is a defined term under the LTD Plan. Elimination Period means the longer of the number of consecutive days at the beginning of any one period of Disability which must elapse before benefits are payable *or the expiration of any Employer sponsored short term Disability benefits or salary continuation program, excluding benefits required by state la*w. (emphasis added).[13] The denial letter asserted that the Elimination Period was 90 days. It did not mention expiration of the employer sponsored STD plan. Doherty received Employer sponsored short term disability benefits until those benefits expired at 12 weeks. Hartford concedes Doherty was disabled beyond the LTD benefit start date. By definition, he was continuously disabled throughout the elimination period and beyond.

### 2. Hartford approved Doherty's STD for the entire Elimination Period. It then denied the LTD claim asserting that Doherty was not disabled during the entire Elimination Period. Hartford's conduct was arbitrary and capricious and allows it to game the system.

---

10 AR 102
11 AR 220
12 AR 85
13 AR 975

Hartford agrees that Doherty was disabled as of March 5, 2014. At that time, however, Doherty was on STD. He was not actively at work. By approving his STD claim for the maximum benefit period, Hartford effectively prevented Doherty from returning to the workplace. Had he returned to work for even a single day, a new elimination period would have commenced on March 5, 2014, the date Hartford concedes he was disabled and Doherty would have been entitled to LTD benefits so long as the disability continued throughout and beyond the Elimination Period. Since the denial letter was written on July 11, 2014 and Hartford conceded Doherty was disabled on that date, he would have met the 90 day elimination period and would have been entitled to LTD benefits.

If Hartford's conduct is allowed to stand, it could effectively deny all LTD claims. Hartford could approve STD claims, no matter the medical evidence presented, and then deny all LTD claims alleging that the claimant was not disabled during the entire STD period.

### Standard of Review

An ERISA beneficiary is authorized by Section 502(a) of ERISA, to bring a civil action "to recover benefits due to him under the terms of his plan…or to clarify his rights to future benefits under the terms of the plan.[14]

A district court may review determinations made by employee benefit plans, including employee disability plans. *Baker v. Metro. Life Ins. Co.,* 364 F.3d 624, 629 (5th Cir. 2004). An administrator's denial of benefits under an ERISA plan is reviewed by the District Court under a *de novo* standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*

---

14 29 U.S.C. 1132(a)(1)(b)

489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989).   The plan in this case does confer such discretion.

In the Fifth Circuit, even if the plan does not expressly give the decision maker discretionary authority, "for factual determinations under ERISA plans, the abuse of discretion standard of review is the appropriate standard." *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991); *see also, Vercher v. Alexander & Alexander*, 379 F.3d 222, 226 (5th Cir. 2004).

But a plan administrator abuses its discretion "where the decision is not 'based on evidence, even if disputable, that clearly supports the basis for its denial.'" *Holland v. Int'l Paper Co. Retirement Plan,* 576 F.3d 240, 247 (5th Cir. 2009) (quoting *Lain v. Unum Life Ins. Co.*, 279 F.3d 337, 342 (5th Cir. 2002)).   Without some *concrete evidence* in the administrative record that supports the denial of the claim, the court must find the administrator abused its discretion. *Vega v. Nat'l Life Ins. Servs., Inc.,* 188 F. 3d 287, 299.

Since Hartford both determines whether Doherty is eligible for benefits and pays benefits out of its own pocket, it operates under a conflict of interest. *Metropolitan Life Ins. Co. v. Glenn,* 128 S.Ct. 2343, 2348, 76 USLW 4495, 171 L.Ed.2d 299 (2008).   This conflict must be weighed as a factor in determining whether there is an abuse of discretion. *Id.*   The fact that Hartford reached its decision to deny while burdened by a conflict of interest can serve as a tiebreaker should the Court find other factors are closely balanced. *Glenn*, at 2351.

In reviewing Hartford's actions, the court must consider that it decided this claim while under a conflict of interest. *Glenn*, at 2348.   A reviewing court may give more weight to a conflict of interest where the circumstances surrounding the plan administrator's decision suggest "procedural unreasonableness." *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 469 (5th Cir.

6

2010). A decision demonstrates procedural unreasonableness where, for example, an administrator takes positions that are financially advantageous by emphasizing evidence which supports denial of benefits and deemphasizing other evidence. *Glenn*, 554 U.S. 118, 128 S.Ct. at 2352.

Hartford's actions suggest procedural unreasonableness. It granted STD benefits until those benefits expired, effectively preventing Doherty from returning to active work. Given Hartford's concession that Doherty was disabled as of March 5, 2014, a new elimination period would have commenced on that date and he would have been entitled to LTD benefits if the disability continued throughout and beyond the elimination period. Hartford benefited by approving the STD claim and preventing Doherty from returning to the workplace. It then reversed its decision while administering the LTD claim and prevented Doherty from collecting LTD benefits alleging he was not continuously disabled during the STD period.

Application of the abuse of discretion standard for plan language interpretation is a two-step process. First, a court must determine the legally correct interpretation of the plan. If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion. In answering the first question, i.e., whether the administrator's interpretation of the plan was legally correct, a court must consider:

(1) whether the administrator has given the plan a uniform construction,

(2) whether the interpretation is consistent with a fair reading of the plan, and

(3) any unanticipated costs resulting from different interpretations of the plan.

7

If a court concludes that the administrator's interpretation is incorrect, the court must then determine whether the administrator abused its discretion. Three factors are important in this analysis:

(1) the internal consistency of the plan under the administrator's interpretation,

(2) any relevant regulations formulated by the appropriate administrative agencies, and

(3) the factual background of the determination and any inferences of lack of good faith. *Wildbur v. Arco Chem. Co.*, 974 F.2d 631, 637-638, (5th Cir. 1992). Ignoring the plain language of the plan, when the administrator's interpretation of the plan is in direct conflict with the express language in a plan, is a very strong indication of arbitrary and capricious behavior. *Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir.1982).

*Argument*

1. **The plain language of the Plan establishes that Doherty was continuously disabled throughout and beyond the Elimination Period**

Elimination Period is a defined term under the Plan. It can be 90 days or it can be "the expiration of any Employer sponsored short term Disability benefits or salary continuation program".[15] Doherty received STD benefits beginning January 14, 2014.[16] The benefits continued for the maximum period and expired on April 7, 2014. Hartford states that the elimination period is 90 days and ignores the second half of the Plan language defining "Elimination Period." The

---

15  AR 921, 25
16  AR 850

8

expiration of maximum STD benefits under the employer sponsored plan and the expiration of 90 days both fall on April 7, 2014.[17]

The *Wildbur* factors establish Hartford's interpretation of the Plan constituted an abuse of discretion. At the first step the court must determine the legally correct interpretation of the Plan. Hartford ignored the Plan language defining "Elimination Period" as the expiration of an employer sponsored STD period. Ignoring or omitting Plan language cannot be a legally correct interpretation.

Here, all *Wildbur* factors are present but one. Hartford did not give the Plan a uniform construction. Hartford acknowledges that Doherty became disabled as of March 5, 2014. Had he returned to active work, his LTD coverage would have extended under certain circumstances. Coverage would have extended if the claimant were under a Leave of Absence, a Lay-off, or under written approved Family Medical Leave.[18] Coverage is also extended while on approved employer paid STD. He did not return to active work because he was on an employer provided STD, approved by Hartford. Hartford's claim log establishes that it was aware of the alternate definition of "Elimination Period" and that Doherty met the "Elimination Period" by being on STD. The log states "LTD policy does ext for STD> So the LTD eff date will be moved to 4-8-14. as STD ends on 4-7."[19]

Hartford's interpretation is inconsistent with a fair reading of the Plan. The Plan defines "Elimination Period" as "expiration of any Employer sponsored short term Disability benefits or salary continuation program".[20] A fair reading of the Plan cannot ignore or omit Plan language.

---

17 AR 70, 850
18 AR 162
19 AR 70
20 AR 935

9

Unanticipated costs are those that the Plan would incur as a result of an interpretation other than the one reached by Hartford. Since the Plan states that a claimant who is on STD until the expiration of the STD period has met the "Elimination Period", there are no unanticipated costs. He would be entitled to LTD benefits if he continued to be disabled throughout the STD expiration period and beyond. Hartford concedes that Doherty was disabled at the LTD benefit onset date.

Hartford's interpretation of the Plan lacks consistency. While it is completely acceptable that an administrator can evaluate whether a claimant is disabled at the transition from STD to LTD, the Plan restricts the evaluation to disability at the time of the transition and going forward. The Elimination Period has been met. It is inconsistent to acknowledge that the claimant is disabled at the transition date, but then deny benefits because it revisited its previous favorable STD disability determination. In this case, Hartford acknowledged that Doherty was disabled on March 5, 2014 for LTD purposes.[21] It notified Doherty that he was disabled for STD purposes through the expiration of the STD period on March 11, 2014.[22]

Doherty is unable to cite to any relevant regulations formulated by the appropriate administrative agencies that deal with this specific Plan determination.

When an administrator's interpretation of a plan is in direct conflict with express language in a plan, it is a very strong indication of arbitrary and capricious behavior. *Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir.1982).

---

21 AR 101
22 AR 851

2. ***Hartford approved Doherty's STD for the entire Elimination Period.  It then denied the LTD claim asserting that Doherty was not disabled during the entire Elimination Period. Hartford's conduct was arbitrary and capricious and allows it to game the system.***

Doherty acknowledges that an ERISA claims administrator has the right to evaluate eligibility for LTD benefits at the transition from STD to LTD. It cannot, however, ignore Plan language. The Plan states that a claimant meets the Elimination Period by reaching the expiration of an employer provided STD Plan. Doherty was not able to find case law on point and it appears that this is a case of first impression.

The Fifth Circuit made clear that an initial favorable LTD determination does not ensure benefits for all time. *Ellis v. Liberty Life Assur. Co.*, 394 F.3d 262, 274 (5th Cir. Tex. 2004). In *Ellis*, however, the administrator determined that the claimant was not disabled at the date of the decision. In contrast, Hartford agrees that Doherty was disabled at the transition. If a plan administrator is allowed to revisit the STD determination and claim that the Elimination Period is not met, it would be able to deny every LTD claim, even those where the administrator now acknowledges the claimant is disabled. It could hoodwink claimants. For example, in a situation where a claimant submitted an application with marginal medical information even with a seriously debilitating condition, an administrator could approve the STD claim and then at the transition say the medical evidence did not support that the disability extended throughout the elimination period and beyond. The administrator would have carte blanche to deny all LTD claims using this strategy. This strategy could also be used to prevent workers from returning to the workplace and starting a new elimination period.  There is no reason a worker would return to the workplace while on approved short term disability.

11

### *STD Benefit Calculation*

Doherty abandons his claim regarding Hartford's STD benefit calculation. Doherty's

employment offer required that he work a 24 hour on-call period and that he work weekends. He

accepted the offer. Although the employer confirmed that his "base salary" was $53,040.00, his

required hours moved the salary to over $70,000.00. Doherty could find no legal authority for

the argument that required hours increase a claimant's "base salary."

### *Conclusion*

For these reasons, Darren Doherty respectfully requests this court issue a decision finding that

Doherty met the Elimination Period under the Plan and award monthly LTD benefits from April 8,

2014 until July 11, 2014, and that the case be remanded to Hartford for determination of Doherty's

continuing eligibility.

Respectfully submitted,

BEMIS, ROACH & REED
4100 Duval Road, Bldg. I, Suite 200
Austin, Texas  78759
(512) 454-4000
(512) 453-6335 (fax)

By:     /s/ Greg Reed
        GREG REED
        State Bar No. 16677750
        *For Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of December, 2016, a true and correct copy of the foregoing document has been sent via the ECF system to Ms. Lisa Magids, Sedgwick, LLP, 919 Congress Avenue, Suite 1250, Austin, Texas 78701.

_____
Greg Reed